1

2

3

4

5

6

7

8               **IN THE UNITED STATES DISTRICT COURT**

9             **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  CALVIN U. OLIVER,                      No. CIV S-06-0497-CMK

12              Plaintiff,

13        vs.                              <u>MEMORANDUM OPINION AND ORDER</u>

14  JO ANNE B. BARNHART,
    Commissioner of Social Security,

15
                Defendant.
16
    _____/
17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20  Pursuant to the consent of the parties, this case is before the undersigned for final decision on

21  plaintiff's motion for summary judgment (Doc. 11) and defendant's cross-motion for summary

22  judgment (Doc. 12).

23  / / /

24  / / /

25  / / /

26  / / /

# I. BACKGROUND

Plaintiff applied for disability insurance benefits on September 9, 2003, based on disability.  In his application, plaintiff claims that his impairment began on July 1, 2002.  In a disability report submitted October 27, 2003, plaintiff claims his disability consists of a combination of "[h]ypertension, irritable bowel syndrome, arthritis on my lower back, kidney problems, cramps, and migraine headaches."   In his brief, plaintiff states that his impairments consist of: "(1) Essential Hypertension; (2) Gastrointestinal problems, GERD, causing chronic diarrhea; (3) Lumbar back problems; (4) Intractable hiccups; (5) Bullet in left axilla; (6) Possible renal failure; [and] (7) Pulmonary problems, and Atrial Fibrillation requiring cardioconversion in 2002."  Plaintiff is a United States citizen born May 6, 1945, with a high school education and some special training as a machinist.

## A.    <u>Summary of the Evidence</u>

The record contains progress notes from North Oakland Family Practice for the period March 19, 1999, through May 28, 2003.[1]  These records reflect that, during this time period, plaintiff complained of flu symptoms, stomach pain, arm pain, shoulder pain, and lower back pain.  Plaintiff was also prescribed medication to control blood pressure.  Progress notes from July 26, 2001, indicate that plaintiff was cleared to return to work.

In the disability report submitted by plaintiff on October 27, 2003, plaintiff states that he is unable to work because: "The [irritable bowel syndrome] limits my ability to remain on the job, my hypertension causes me to get dizzy, the arthritis causes my hands to cramp, and I have a hard time concentrating because of my migraine headaches."  Plaintiff also states:

> I have recurring nightmares that make sleeping difficult.  I am usually
> awake for most of the night.  I am constantly plagued by chronic diarrhea,
> which limits my mobility to a great degree, almost causing me to be home
> bound.  I also suffer from night sweats, which disturbs my sleep pattern.
> There are times when my bed becomes so damp from my night sweats that

---

[1]     The index to the certified administrative record erroneously indicates these records cover the period March 27, 2003, through April 18, 2003.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

it wakes me up and I have to change my bedding.  I have headaches, that at times become so severe that I become completely incapacitated and unable to function normally.  I must lie down until the headaches diminish.

With the disability report, plaintiff also submitted a daily activities questionnaire. Plaintiff states that he is sick every day and that he can't sleep.  He also states, however, that he does not have any difficulties in caring for his personal needs.  Plaintiff states that his sister, Hortense Oliver, with whom he lives, does all the shopping.  As to household chores, plaintiff states that he does none.  He states that he does not often go out of his home and that when he does go out, he walks and goes nowhere in particular.  Plaintiff also states that he doesn't have problems concentrating and, when asked whether he has trouble finishing tasks, he responded "I guess."

The record also contains a "Function Report: Adult – Third Party" submitted by Ms. Oliver, on November 4, 2003.  As to daily activities, Ms. Oliver states that plaintiff does small things during the day, such as washing dishes, vacuuming watering the grass, and watching television.  Ms. Oliver states that plaintiff does not take care of any family members or pets.  She also states that plaintiff does not get much sleep.  Ms. Oliver states that plaintiff's impairments do not affect his ability to dress himself, bathe, care for his hair, shave, or feed himself.  She does, however, state that plaintiff has constant diarrhea and needs reminders to brush his teeth and groom his hair.  Ms. Oliver states that plaintiff does not prepare his own meals because he cannot remember how to cook.  She states that plaintiff goes outside every day, either by walking, driving a car, or being driven.  Ms. Oliver states that plaintiff can go out alone.  According to Ms. Oliver, plaintiff does no shopping, but pays his own bills, handles a savings account, counts change, and uses a checkbook.  As to hobbies and interests, Ms. Oliver states that plaintiff used to enjoy lifting weights, jogging, and playing tennis and basketball, but that he does not do any of these things due to his impairments.  She also states that plaintiff never visits with family or friends.  As to plaintiff's abilities in general, Ms. Oliver states that

3

1 plaintiff's impairments affect his memory, concentration understanding, ability to follow

2 instructions, and ability to get along with others.  She states that plaintiff can only walk two

3 blocks before he must rest.

4 　　　　　　Plaintiff was examined on December 9, 2003, by J. Martin, M.D., an internal

5 medicine specialist.  In his report, Dr. Martin stated that plaintiff's chief complaints were

6 hypertension and back pain.  Following an examination of plaintiff, Dr. Martin offered the

7 following opinion as to plaintiff's capabilities:

8 　　　　　. . . Based on the objective findings, I would anticipate this claimant can
　　　　　lift no more than 20 lbs. at a time and frequently lift or carry up to 10 lbs.
9 　　　　　The claimant can stand and walk, off and on, for at least six hours in an
　　　　　eight-hour day.  The claimant can sit for six hours in an eight-hour day.
10 　　　　　The claimant appears to have the ability to grasp, hold, and turn objects
　　　　　and has good use of the hands and fingers for repetitive hand and finger
11 　　　　　actions.

12 　　　　　　The record contains a physical residual functional capacity assessment completed

13 on December 22, 2003, by an agency reviewing doctor.[2]  Plaintiff was not examined in

14 connection with this assessment.  The agency doctor opined that plaintiff could occasionally lift

15 50 pounds and frequently lift 25 pounds; that plaintiff could stand and/or walk for six hours in an

16 eight-hour day and that plaintiff could sit for the same amount of time; that plaintiff was

17 unlimited in his ability to push and/or pull; that plaintiff could frequently climb, balance, stoop,

18 kneel, crouch, and crawl; and that no manipulative, visual, communicative, or environmental

19 limitations were established.  The agency doctor stated that he reviewed examining source

20 records in compiling his assessment.

21 　　　　　　The record also contains medical records from Sutter Memorial Hospital for the

22 period December 25, 2003, through February 6, 2004.[3]  These records reveal that plaintiff was

23 _____

24 　　　[2]　　　The signature on the assessment is not legible and the record does not otherwise
reflect the identity of the agency reviewing doctor.

25

26 　　　[3]　　　The index to the certified administrative record erroneously indicates the starting
date for these records as December 30, 2003.  In fact, the records reflect that plaintiff was treated

first treated on December 25, 2003, for hiccups.  An x-ray taken that day revealed no evidence of

active intrathoracic disease, but noted a "radiopaque bullet . . . within the left axillary soft

tissues."[4]  The x-ray also revealed that the "aorta is lightly tortuous and ectatic," but that the

"cardiac silhouette is within normal limits" and that the "lungs are clear."  The diagnostic

impression from the x-ray was that there were no signs of acute cardiopulmonary disease, but

that there was a foreign body consistent with a bullet in the left axilla.  On December 25, 2003,

plaintiff was prescribed Reglan to control his hiccups.  Plaintiff was again seen at the emergency

room on February 6, 2004, complaining of hiccups.  His prescription for Reglan was renewed

and plaintiff was directed to return for a follow-up examination.

On January 30, 2004, plaintiff submitted a disability report in connection with his

administrative appeal.  In this document, plaintiff states that his condition has become worse

since he last filed a disability report.  Specifically, plaintiff states that on December 25, 2003, he

was told by his doctor that his "lungs are bad."  Also, plaintiff states that sometime in 2003 his

right leg began to hurt and that he cannot stretch his leg without pain.  Plaintiff states that, on

December 19, 2003, he developed a "bad hiccup episode" which lasted one week and which

caused him difficulty breathing.  As to how his changing condition has affected his activities,

plaintiff states:

> I can no longer do any activities that require bending, or sitting for long
> periods of time.  The pain in my back limits the amount of time I can
> drive.

Plaintiff also states:

> I can no longer lift weights.  I used to be a body builder.  I no longer go
> out with friends and family because of my stomach condition.  I must stay
> in close proximity of my home.

In another disability report on appeal submitted June 21, 2004, plaintiff states

in the emergency room on December 25th.

[4]     The record reflects that plaintiff reported that he had been shot by his wife.

1  that, as of February 2004, his condition was worse because his "liver has further deteriorated."

2  He also states that, as of May 21, 2004, his anemia causes extreme fatigue.  Plaintiff states that

3  on June 1, 2004, he was informed that he has high cholesterol and heart disease.  He states that

4  he moves around more slowly and that he has difficulty sleeping because his anemia causes

5  fatigue.

6          Finally, the record reflects that plaintiff and a vocational expert testified at the

7  administrative hearing.  Plaintiff's sister did not testify.

8      **B.**    **Procedural History**

9          Plaintiff's claim was initially denied.  Following denial of his request for

10 reconsideration, plaintiff requested an administrative hearing, which was held on May 4, 2005,

11 before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.

12         In his May 23, 2005, decision, the ALJ made the following findings:

13     1.    The claimant meets the nondisability requirements for a period of
            disability and Disability Insurance Benefits set forth in . . . the Social
14           Security Act and is insured for benefits through the date of this decision;

15     2.    The claimant has not engaged in substantial gainful activity since the
            alleged onset of disability;
16
17     3.    The claimant's degenerative disc disease, hypertension, GERD, diarrhea,
            and hiccups are considered severe based on the requirements in the
            Regulations. . . ;
18
19     4.    These medically determinable impairments do not meet or medically equal
            one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4;

20     5.    The undersigned finds the claimant's allegations regarding his limitations
            are not totally credible for the reasons set forth in the body of the decision;
21
22     6.    The claimant has the residual functional capacity to perform medium work
            tasks;

23     7.    The claimant is able to perform his past relevant work as a bus driver;

24     8.    The claimant is an individual who is closely approaching retirement age;

25     9.    The claimant has a high school education;

26     10.   The claimant has a semi-skilled work background;

6

11.     Alternatively, the vocational expert identified multiple medium level jobs claimant can perform, and using Medical-Vocational Rules 203.07, 203.08, and 203.09 for decision-making, a finding of not disabled is warranted; examples of such jobs include work as a taxi driver, an auto detailer, a janitor, a dining room attendant, a parking lot attendant, and a small parts assembler; and

12.     The claimant was not under a disability as defined in the Social Security Act at any time through the date of the decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to benefits. After the Appeals Council declined review on January 25, 2006, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In his motion for summary judgment, plaintiff raises several interrelated arguments.  The gravamen of plaintiff's assertion is that the ALJ failed to give proper weight to the competing opinions of the examining and non-examining doctors.  Plaintiff also argues that, because the ALJ failed to properly consider the medical opinions, the finding that plaintiff could perform medium work is not supported by the record.  Similarly, plaintiff argues that, because of the asserted errors in evaluating the medical opinions, the hypothetical questions posed to the vocational expert, which describe plaintiff as capable of performing medium work, fail to accurately describe plaintiff's limitations.

### A.      Evaluation of the Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to Dr. Martin, the ALJ stated:

> J. Martin, M.D., performed a consultative internal medicine evaluation in December 2003.  Dr. Martin noted a history of hypertension somewhat controlled by a medication regimen and lumbago which was managed conservatively.  Upon examination, there was full movement of the cervical and dorsolumbar spine.  The claimant was able to squat and arise from the squatting position and reported increased lumbago with straight-back squatting.  Seated and supine sciatic tension testing was negative bilaterally.  There was no peripheral edema, skin changes or muscular asymmetry or atrophy.  Some degenerative changes were noted in the knees and digits.  Gait was grossly normal and the claimant was able to walk on his heels and toes.  There were no focal deficits in the upper and lower extremities and no carotid bruits noted.  Dr. Martin assess hypertension with associated renal insufficiency, gastritis/GERD, and musculoskeletal complaints possibly related to degenerative arthritis.

* * *

/ / /

/ / /

9

In making [a residual functional capacity] determination, the undersigned has weighed the medical opinion found in the record. The evidence generally documents monitoring for hypertension, GERD, hiccups, and diarrhea. Dr. Martin, internist, noted in December 2003 that ongoing control of various conditions was not particularly great due to the lack of compliance with medication regimens by the claimant. Dr. Martin conducted a rather unremarkable examination. Based on the objective findings, Dr. Martin anticipated an ability to lift/carry no more than 20 pounds at a time and 10 pounds frequently; stand/walk for at least six hours in an eight-hour day, off and on; and sit for six hours in an eight-hour day. He assessed that the claimant appeared to have the ability to grasp, hold, and turn objects, and has good use of the hands and fingers for repetitive hand and finger actions. The undersigned finds Dr. Martin's opinion to be brief, conclusory in form, and ambiguous. Generally, it is unsupported by objective findings that would be likely to create such limitations. Dr. Martin appears to have accepted the claimant's subjective complaints as objective fact and his assessment of the claimant's functional limitations appears exaggerated. As such, his conclusory statement that claimant can only do light work is rejected because it is contrary to his own clinical findings and the other evidence of record.

As to the agency non-examining doctor's assessment, the ALJ stated:

The State Agency medical consultants issued medical source statements regarding the claimant's ability to perform work-related activities. The medical consultants reported that the claimant is capable of medium work activity. The Administrative Law Judge notes that although these are non-examining physicians, under Social Security Ruling 96-6p their opinions are entitled to consideration in conjunction with all of the other evidence. The State Agency consultants' opinions, as they pertain to the claimant's impairments, show consistency with the record and are thus found persuasive by the undersigned.

As to both doctors' opinions, the ALJ stated:

The substantial evidence of record, as noted above, confirms that the claimant continues to have problems with degenerative disc disease, hypertension GERD, diarrhea, and hiccups. The opinions of practitioners of record generally support the findings regarding the claimant's ability to perform work-related activities. Even with the limitations that the claimant's conditions impose, the record supports that the claimant has a residual functional capacity for medium work activity. This contention is supported by medical source statements which were issued by medical consultants with the State Agency, as well as the grossly normal findings of the consultative internal medicine examination as discussed above.

///

///

10

1   Plaintiff argues that the ALJ failed to give proper weight to the opinion of examining physician,

2   Dr. Martin.  Specifically, plaintiff asserts that the ALJ failed to articulate legally sufficient

3   reasons for accepting the non-examining agency doctor's opinion over Dr. Martin's opinion.

4          This case squarely presents a conflict between the opinions of an examining

5   professional – Dr. Martin – and a non-examining professional – the agency doctor.  Because Dr.

6   Martin's opinion is contradicted, the ALJ is required to state "specific and legitimate" reasons

7   supported by the record as a whole for rejecting the opinion.  See Lester, 81 F.3d at 830.

8   Moreover, without "other evidence," the agency doctor's opinion is insufficient to reject Dr.

9   Martin's opinion.  See id. at 830-31.  Thus, there are three issues for this court to decide:

10  (1) whether the ALJ provided specific and legitimate reasons for rejecting Dr. Martin's opinion

11  of a more limited functional capacity; (2) if so, whether such reasons are supported by the record

12  as a whole; and (3) whether there is other evidence in the record to support the ALJ's reliance on

13  the agency doctor's opinion.

14         The ALJ characterized Dr. Martin's opinion as exaggerated and rejected it

15  because "it is unsupported by objective findings that would be likely to create such limitations"

16  and because Dr. Martin "appears to have accepted the claimant's subjective complaints as

17  objective fact."  The court finds that these are both specific and legitimate reasons.  It is entirely

18  legitimate to conclude that an examination that was generally unremarkable would not yield an

19  opinion that plaintiff's capabilities are as limited as Dr. Martin suggests.  It is also legitimate to

20  conclude that an opinion based on plaintiff's subjective complaints is not entitled to any weight.

21  See Meanel, 172 F.3d at 1113; see also Magallanes, 881 F.2d at 751.

22         The next question is whether these reasons are supported by substantial evidence

23  in the record.  As to the first reason – that the objective findings are out of proportion to the

24  opined limitations – the record reveals that the examination was, in fact, unremarkable.  The only

25  abnormalities Dr. Martin noted were "[s]ome epigastric tenderness to palpation," "increased

26  lumbago with straight-back squatting,"and "[s]ome degenerative changes noted in the knees and

digits." As to the second reason – that Dr. Martin's opinion is based on subjective complaints – the court finds that this is also supported by the record. Particularly telling is Dr. Martin's final assessment:

> Assessment of medical/physical issues:
> 1. Hypertension with associated renal insufficiency
> 2. Gastritis/GERD
> 3. History of tachyarrhythima by report
> 4. Musculoskeletal complaints possibly related to degenerative arthritis

The court notes that Dr. Martin specifically noted that his diagnosis of tachyarrhythima is "by report" and not based on some objective finding. Similarly, the muskuloskeletal deficiencies noted are based on "complaints."

The final question is whether there is other evidence in the record to support the ALJ's reliance on the agency non-examining doctor's opinion in lieu of Dr. Martin's opinion. The court finds that there is. First, as discussed above, the unreliability of Dr. Martin's report is evidence other than the agency doctor's opinion. Second, as discussed by the ALJ, Dr. Martin's opinion of limited capabilities is not consistent with plaintiff's statements regarding his daily activities.[5]

For all of the foregoing reasons, the court concludes that the ALJ's analysis of the competing medical opinions was based on a proper legal analysis and on substantial evidence in the record as a whole.

**B.    Medium Work Finding**

Plaintiff argues that the ALJ's finding that he could perform medium work is not supported by the record because the ALJ improperly evaluated the competing medical opinions. This argument succeeds or fails with plaintiff's arguments concerning the weight given to the medical opinions. Because, as discussed above, the court concludes that the ALJ correctly weighed the medical opinions, the court also concludes that the ALJ's finding that plaintiff can

---

[5]    The ALJ rejected as not credible plaintiff's hearing testimony as to more restricted capabilities. Plaintiff does not challenge the ALJ's credibility finding.

1    do medium work is supported by the evidence.  Specifically, the ALJ properly accepted the

2    agency doctor's opinion – consistent with medium work – over Dr. Martin's opinion.

3         **C.     Hypothetical Questions**

4              Hypothetical questions posed to a vocational expert must set out all the

5    substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

6    Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

7    limitations, the expert's testimony as to jobs in the national economy the claimant can perform

8    has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

9    the ALJ may pose to the expert a range of hypothetical questions, based on alternate

10   interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

11   determination must be supported by substantial evidence in the record as a whole.  See Embrey

12   v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

13             Plaintiff argues that the hypothetical questions posed by the ALJ to the vocational

14   expert did not accurately describe his limitations because the finding that plaintiff can perform

15   medium work is not supported by the record.  The court notes initially that the ALJ denied

16   benefits at step four by concluding that plaintiff's residual functional capacity allows him to

17   return to his past relevant work as a bus driver.  Because the record supports residual functional

18   capacity of medium work, the court concludes that the ALJ was correct at step four.

19             Even if the ALJ erred at step four, the hypothetical questions posed to the

20   vocational expert accurately reflected plaintiff's capability for medium work.  Because the

21   record does not support Dr. Martin's more limited assessment, it was not error to base a

22   vocational finding on a response to a hypothetical question which assumed a capacity for

23   medium work.

24   / / /

25   / / /

26   / / /

**IV.  CONCLUSION**

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

      1.      Plaintiff's motion for summary judgment is denied;

      2.      Defendant's cross-motion for summary judgment is granted; and

      3.      The Clerk of the Court is directed to enter judgment and close this file.

DATED:   September 28, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE